# United States District Court
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| DAVID MOSURE and KRISTEN KOVAL | § § | |
| v. | § § | CIVIL ACTION NO. 3:23-CV-2126-S |
| SOUTHWEST AIRLINES, CO., and JOHN/JANE DOES NOS. 1-10 | § § § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Southwest Airlines, Co.'s ("Southwest") Motion to Dismiss Plaintiffs' Amended Complaint for Damages ("Motion") [ECF No. 29]. The Court has reviewed the Motion, Southwest's Brief in Support of the Motion ("Southwest's Brief") [ECF No. 30], Plaintiffs David Mosure and Kristen Koval's Brief in Opposition to the Motion ("Response") [ECF No. 39], Southwest's Reply in Support of the Motion ("Reply") [ECF No. 41], and the applicable law. For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion.

### I. BACKGROUND

On January 29, 2020, Plaintiffs boarded an aircraft owned, leased, operated, and/or controlled by Southwest. Am. Compl. for Damages ("Amended Complaint") [ECF No. 21] ¶¶ 7, 9. Plaintiff Kristen Koval brought a carry-on bag onto the aircraft. *Id.* ¶ 9. Because Plaintiffs sat in the first row, which has no storage area on the floor, Plaintiff David Mosure stored Koval's bag in the overhead compartment. *Id.* At some point during the flight, Mosure retrieved the bag from the overhead compartment. *Id.* ¶ 10. Later in the flight, the captain announced that "due to expected turbulence, all passengers should return to their seats and buckle in their safety belts." *Id.* ¶ 11. According to Plaintiffs, a flight attendant then directed Mosure to return the bag to the overhead compartment, and Mosure complied with the instruction. *Id.* ¶¶ 12-13. Plaintiffs allege that while

Mosure was placing the baggage into the overhead compartment, the aircraft encountered turbulence. *Id.* ¶ 14. Mosure was thrown into a seat armrest and onto the aisleway floor, which allegedly caused injuries to his neck, back, and torso. *Id.*

As a result of the foregoing, Plaintiffs sued Defendants Southwest and John/Jane Does Nos. 1-10 for negligence. Plaintiffs allege that Southwest owed them four duties that it breached: (1) a duty to exercise the highest degree of care consistent with the practical operation of the flight; (2) a duty to exercise a reasonable degree of care to safely transport its passengers; (3) a duty to warn its passengers of dangerous conditions; and (4) a duty to train its flight attendants "to not give directions to Southwest passengers in contravention of direct orders of the" captain. *Id.* ¶¶ 18-21. Plaintiffs also allege that John Doe 1, the flight attendant, owed them the first three duties. *See id.* ¶¶ 28-30. Finally, Plaintiffs bring a claim for loss of consortium. *Id.* ¶¶ 34-36. Southwest moves to dismiss all of Plaintiffs' claims.[1]

## II. LEGAL STANDARD

To defeat a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility does not require probability, but a plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court must accept well-pleaded facts as true and view them in the light most

---

[1] Although Southwest does not expressly raise any arguments concerning Plaintiffs' loss of consortium claim, loss of consortium claims fail if the underlying claims are dismissed. *Cofresi v. Medtronic, Inc.*, 450 F. Supp. 3d 759, 770 (W.D. Tex. 2020) (citing *Barker v. Halliburton Co.*, 645 F.3d 297, 299 (5th Cir. 2011)).

2

favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). At the motion to dismiss stage, the court does not evaluate the plaintiff's likelihood of success. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977). It only determines whether the plaintiff has stated a claim upon which relief can be granted. *See id.*

### III. ANALYSIS

Southwest asks the Court to dismiss Plaintiffs' claims for failure to state a claim upon which relief can be granted. To support this request, Southwest raises four arguments. First, the Court considers whether Plaintiffs' negligent training claim was filed after the statute of limitations passed. Southwest's Br. 13-14. Next, the Court analyzes whether Plaintiffs' claims are barred by conflict preemption or the Federal Aviation Act ("Act")[2] due to field preemption. *Id.* at 7-11. Finally, the Court considers whether Plaintiffs plausibly plead a negligence claim. *Id.* at 11-12.

#### *A. Statute of Limitations*

Plaintiffs allege that Southwest "owed a duty to train its flight attendants to not give directions to Southwest passengers in contravention of direct orders of the Flight Captains while airborne." Am. Compl. ¶ 21. Southwest argues that this negligent training claim is time-barred

---

[2] The Act authorizes and directs the Administrator of the Federal Aviation Administration ("FAA") to set air safety standards and regulations, which are codified in Title 14 of the Code of Federal Regulations. *Witty v. Delta Air Lines, Inc.*, 366 F.3d 380, 384 (5th Cir. 2004).

because it was filed after the two-year statute of limitations had passed. *See* Southwest's Br. 13-14. Plaintiffs do not respond to this argument. However, "[e]ven where a party 'ha[s] not briefed [an] issue at all, Rule 12 does not by its terms require an opposition; failure to oppose a 12(b)(6) motion is not in itself grounds for granting' a motion to dismiss." *Walker v. Stroman*, No. 20-50602, 2022 WL 2073834, at *3 (5th Cir. June 9, 2022) (second and third alterations in original) (quoting *Servicios Azucareros de Venez., C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 806 (5th Cir. 2012)). Upon review of the procedural history, allegations, and applicable law, the Court agrees that Plaintiffs' negligent training claim is time-barred.

"A statute of limitations provides a time limit for filing suit in a civil case, based on the date when the claim accrued." *Sistrunk v. Haddox*, No. 18-516, 2020 WL 2549699, at *7 (W.D. La. May 19, 2020) (citing *CTS Corp. v. Waldburger*, 573 U.S. 1, 7 (2014)). A claim accrues "the moment the plaintiff becomes aware she has suffered an injury or has sufficient information to know that she has been injured." *Wilson v. Tex. Christian Univ.*, No. 3:20-CV-00106-M, 2021 WL 4197263, at *3 (N.D. Tex. Sept. 15, 2021) (citing *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 762 (5th Cir. 2015)). A plaintiff's awareness consists of two elements: "(1) [t]he existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions." *Id.* (alteration in original) (quoting *King-White*, 803 F.3d at 762). The length of a statute of limitations is based upon state law. *Frame v. City of Arlington*, 657 F.3d 215, 238 (5th Cir. 2011) (citation omitted). Under Texas law, the statute of limitations for negligent training claims is two years.[3] *Welk v. Simpkins*, 402 F. App'x 15, 17 (5th Cir. 2010) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 16.003).

---

[3] Ohio—where the original complaint was filed—also has a two-year statute of limitations on negligent training claims. *Waseleski v. City of Brooklyn*, No. 1:23-CV-00548, 2024 WL 1767279, at *9 (N.D. Ohio Apr. 24, 2024) (citing OHIO REV. CODE ANN. § 2305.10(A)).

Plaintiffs' negligent training claim was filed more than two years after it accrued. Mosure's injuries occurred on January 29, 2020. Am. Compl. ¶ 7. Plaintiffs' negligent training claim accrued on the same day because they were on notice of a potential claim. Plaintiffs allege that they both heard the captain's turbulence warning and the flight attendant's allegedly contravening instruction. *Id.* ¶¶ 11-12. Plaintiffs also believed that it was this instruction that led to Mosure's injuries. *Id.* ¶¶ 13-14. Thus, Plaintiffs' allegations "affirmatively demonstrate" that on January 29, 2020, Plaintiffs had sufficient information to draw a connection between Mosure's alleged injuries and an alleged failure to train flight attendants to follow the captain's orders. *Frame*, 657 F.3d at 240 (citation omitted). The first time Plaintiffs' negligent training claim appeared was in the first amended complaint filed on January 17, 2024. *Compare* Am. Compl. for Damages [ECF No. 16] ¶ 21 *with* Compl. for Damages [ECF No. 1] ¶¶ 17-25. Since Plaintiffs' negligent training claim accrued on January 29, 2020, it was filed after the two-year statute of limitations.

Generally, a plaintiff may rebut a statute of limitations argument by showing that the statute of limitations was tolled or that the claim relates back to the original complaint. *See Johnson v. Harris County*, 83 F.4th 941, 945 (5th Cir. 2023) ("Rule 12(b)(6) dismissal under a statute of limitation is proper only when the complaint makes plain that the claim is time-barred and raises no basis for tolling." (citation omitted)); *Whitt v. Stephens County*, 529 F.3d 278, 282 (5th Cir. 2008) ("The claims against the named defendants are thus time-barred unless they 'relate back' to the original filing of the complaint per Federal Rule of Civil Procedure 15(c)." (citation omitted)). However, the burden is on the plaintiff to establish tolling or relation back. *See Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002) ("The petitioner bears the burden of proof concerning equitable tolling . . . ." (citation omitted)); *Al-Dahir v. F.B.I.*, 454 F. App'x 238, 242 (5th Cir. 2011) ("Plaintiffs have the burden to demonstrate that an amended complaint relates back under

Rule 15(c)." (citation omitted)). Because the Amended Complaint itself raises no basis for tolling or relation back, and because Plaintiffs did not respond to the Motion on this point, they cannot meet their burden. *See Schell v. Chief Just. & Justs. of Okla. Supreme Ct.*, 11 F.4th 1178, 1191 n.6 (10th Cir. 2021) (explaining that "[b]y not responding to the statute-of-limitations argument," the plaintiff "never attempted to satisfy" his burden to show that an exception to the statute of limitations applied); *Demmings v. Davis*, No. 3:18-CV-017-C (BT), 2019 WL 1061305, at *2 (N.D. Tex. Feb. 11, 2019) (noting that because the plaintiff "ma[de] no argument that he [was] entitled to equitable tolling," he had failed to show circumstances justifying equitable tolling), *report and recommendation adopted by* 2019 WL 1059974 (N.D. Tex. Mar. 6, 2019). Accordingly, the Court concludes that Plaintiffs' negligent training claim is time-barred and grants the Motion as to that claim.

### *B. Federal Preemption*

"The doctrine of preemption stems from the Supremacy Clause, which gives federal law precedence over a conflicting state law." *White Buffalo Ventures, LLC v. Univ. of Tex. at Austin*, 420 F.3d 366, 370 (5th Cir. 2005) (citing U.S. CONST. art. VI, cl. 2.; *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992)). Preemption of state law occurs in three instances. "First, express preemption occurs when Congress 'adopts express language defining the existence and scope of pre-emption.'" *Est. of Miranda v. Navistar, Inc.*, 23 F.4th 500, 504 (5th Cir.) (quoting *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 109 (1992) (Kennedy, J., concurring)), *cert. denied*, 143 S. Ct. 93 (2022). "Second, field preemption occurs when 'Congress creates a scheme of federal regulation so pervasive as to leave no room for supplementary state regulation.'" *Id.* (quoting *Gade*, 505 U.S. at 109). "Finally, conflict preemption occurs 'where it is impossible for a private party to comply with both state and federal requirements,' or where state law 'stands as an obstacle

6

to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (quoting *Gade*, 505 U.S. at 109). Southwest argues that two types of preemption are applicable: (1) conflict preemption based on 14 C.F.R. § 135.87 and 14 C.F.R. § 91.13 and (2) field preemption based on the Act. The Court considers each in turn.

### *i. Conflict Preemption*

Southwest contends that Plaintiffs' claims are preempted because they create a conflict between Southwest's duties under federal law and state law. *See* Southwest's Br. 7-8; Reply 6-7. Specifically, 14 C.F.R. § 135.87(c)(1)[4] mandates that "[n]o person may carry cargo, including carry-on baggage, in or on any aircraft unless . . . for carry-on baggage, it is restrained so as to prevent its movement during air turbulence." According to Southwest, it is impossible to simultaneously comply with Section 135.87 and "Plaintiffs' proposed state-law duty preventing air carriers from instructing passengers to secure carry-on baggage in periods of suspected turbulence." Southwest's Br. 8. Plaintiffs do not respond to this argument. Upon review of the relevant regulation, allegations, and applicable law, the Court concludes there is no conflict.

"[C]onflict preemption begins with the presumption 'that Congress did not intend to displace state law.'" *Young Conservatives of Tex. Found. v. Smatresk*, 73 F.4th 304, 313 (5th Cir. 2023) (quoting *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981)). To justify dismissal, the movant must show that "compliance with both state and federal law is impossible."[5] *Id.* (quoting *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 377 (2015)). There must be an "actual[] conflict[] with federal

---

[4] "Federal regulations have no less pre-emptive effect than federal statutes." *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982).

[5] Alternatively, a defendant could argue that the state law stands as an obstacle to the accomplishment and execution of the objectives of Congress. *Smatresk*, 73 F.4th at 313. Southwest does not raise this argument.

law." *Sch. Bd. of Avoyelles Par. v. U.S. Dep't of Interior*, 647 F.3d 570, 581 (5th Cir. 2011) (quoting *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990)).

The state law duty asserted by Plaintiffs does not conflict with Section 135.87. "Restrain" is not defined in the regulation.[6] However, under Section 135.87, restraining baggage is distinct from placing it in a cargo rack, bin, or compartment. *Compare id.* § 135.87(c)(1) *with id.* § 135.87(a). The regulation does not require that carry-on baggage be put in the overhead compartment to restrain it, nor does it say who must restrain the baggage or when.[7] It would not have been inconsistent with the regulation, for example, for the flight attendant to place the bag in a compartment or to order it to be restrained by other means. Whether it was negligent for Defendants not to choose an alternative course of action is not before the Court; at this stage it suffices that it was not impossible for Defendants to have the bag restrained without directing Mosure himself to put it in the overhead compartment when they did. *See Univ. of Tex. Sys. v. Alliantgroup LP*, 400 F. Supp. 3d 610, 616 (S.D. Tex. 2019) (rejecting an impossibility claim because the regulations addressed "different issues" and because compliance with both was "not physically impossible"); *Finnicum v. Wyeth, Inc.*, No. 1:09-CV-785, 2010 WL 11527369, at *5, *7 (E.D. Tex. May 25, 2010) (denying an impossibility claim because there were "several avenues available" in which to perform the relevant task).

Southwest also contends that there is a direct conflict between Plaintiffs' proposed duty to exercise care with the practical operation of the flight and 14 C.F.R. § 91.13, which states that "[n]o person may operate an aircraft in a careless or reckless manner so as to endanger the life or

---

[6] Under the standard definition of restrain, the bag need only be "limit[ed], restrict[ed], or ke[pt] under control." *Restrain*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/restrain (last visited July 18, 2024).

[7] As Southwest notes, it is considered a "person" under Title 14. Southwest's Br. 8 n.4 (citing 14 C.F.R. §§ 1.1, 135.1).

8

property of another." Southwest's Br. 11-12. The Court finds that there is no direct conflict. It is not impossible for an airline to both operate with care, as Plaintiffs ask, and to not operate in a careless or reckless manner. Because there is a presumption against conflict preemption and because it was not impossible for Southwest to comply with both federal and state requirements, the Court finds no conflict preemption.

*ii. Field Preemption*

Southwest next asserts that Congress intended to preempt Plaintiffs' negligence claim through the Act's regulatory scheme. *Id.* at 8-11. According to Southwest, the Act preempts "state tort claims that would require the defendant airline to do something different with respect to the warnings and instructions passengers receive" because of the Act's "pervasive scheme of regulations." *Id.* at 10 (citing *Witty*, 366 F.3d at 380). Plaintiffs respond that *Witty* is inapplicable because Plaintiffs do not allege a violation of federally mandated warnings. Resp. 4.

"Field preemption occurs when States are precluded from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance." *Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 795 (5th Cir. 2024) (quoting *City of El Cenizo v. Texas*, 890 F.3d 164, 176 (5th Cir. 2018)). "Congressional intent to preempt is inferred from the existence of a pervasive regulatory scheme[.]" *Witty*, 366 F.3d at 384 (quoting *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 335 n.1 (5th Cir. 1995)). "Field preemption of state law is disfavored" and does not exist unless federal regulations "evidence a desire to occupy a field completely." *McCraw*, 90 F.4th at 796. "[W]here federal 'regulations, while detailed, appear to contemplate some concurrent state regulation,'" there is no field preemption. *Id.* (quoting *R.J. Reynolds Tobacco Co. v. Durham County*, 479 U.S. 130, 149 (1986)). The Court

9

concludes that Congress intended to preempt Plaintiffs' failure to warn claim, but not Plaintiffs' remaining claims.

### a. Failure to Warn

Plaintiffs allege that Southwest "owed a duty to warn passengers . . . against dangerous known conditions or reasonably ascertainable." Am. Compl. ¶ 20. Southwest argues that this claim is preempted under *Witty*. Southwest's Br. 10. The Court agrees. In *Witty*, a passenger developed deep vein thrombosis ("DVT") during a flight. 366 F.3d at 381. The passenger sued the airline for negligence due to its failure to warn passengers about the risk of DVT. *Id.* at 382. The Fifth Circuit examined whether FAA regulations preempted the plaintiff's claim. *Id.* The court concluded that, based upon the numerous federal regulations governing warnings and instructions to passengers, "federal regulatory requirements for passenger safety warnings and instructions are exclusive and preempt all state standards and requirements." *Id.* at 384-85. Plaintiffs' state law-based failure to warn claim—which like the claim in *Witty* faults Defendants for not warning Plaintiffs about a danger during a flight—falls squarely within the holding of *Witty*. Safety warnings from flight crew are within the sole province of the Act and FAA regulations, and therefore Plaintiffs' failure to warn claim is preempted.

### b. Plaintiffs' Remaining Claims

Plaintiffs' remaining claims are that Southwest owed a duty to exercise the highest degree of care consistent with the practical operation of the flight and a duty to exercise a reasonable degree of care to safely transport its passengers while in transit. Am. Compl. ¶¶ 18-19. Plaintiffs allege that Southwest breached these duties by instructing Mosure to place baggage in the overhead compartment during an announced period of turbulence. *Id.* ¶ 22. Southwest argues that *Witty*

10

applies to these claims because it covers "instructions" like the one given to Mosure. Southwest's Br. 10. The Court disagrees.

The Court must conduct an "analysis of the asserted claims compared against the precise scope of the federal regulatory scheme." *Prokaski v. Frontier Airlines, Inc.*, No. 12-CA-512-LY, 2012 WL 12892285, at *3 (W.D. Tex. Aug. 29, 2012) (citing *Witty*, 366 F.3d at 383-84). "Claims" refers to the "aggregate of operative facts giving rise to a right enforceable by a court." *United States ex rel. Vavra v. Kellogg Brown & Root, Inc.*, 848 F.3d 366, 382 (5th Cir. 2017) (quoting BLACK'S LAW DICTIONARY 264 (8th ed. 2004)). Here, the operative facts are that Defendants issued a negligent instruction that led to Mosure's injury. *See* Am. Compl. ¶¶ 18-19, 22. The question before the Court, then, is whether the Act was written such that "the clear and manifest purpose of Congress" was the "complete ouster of state power" to prosecute torts for negligent instructions. *City of El Cenizo*, 890 F.3d at 176 (citation omitted). The Court concludes that preemption was not Congress's purpose for three reasons.

First, it is not clear that Congress intended to completely preempt liability for negligent instructions. "Courts should not infer field preemption in 'areas that have been traditionally occupied by the states'" absent a "clear and manifest" intent from Congress to usurp liability. *McCraw*, 90 F.4th at 796 (quoting *English*, 496 U.S. at 79). "Tort law has historically been left to the states." *Rogers v. Ray Gardner Flying Serv., Inc.*, 435 F.2d 1389, 1394 (5th Cir. 1970); *see also Finley v. Dyer*, No. 3:18-CV-78-DMB-JMV, 2018 WL 5284616, at *6 (N.D. Miss. Oct. 24, 2018) ("Historically, common law liability has formed the bedrock of state regulation, and common law tort claims have been described as a 'critical component of the States' traditional ability to protect the health and safety of their citizens.'" (quoting *Desiano v. Warner-Lambert & Co.*, 467 F.3d 85, 86 (2d Cir. 2006))). Southwest has not identified, and the Court has not found,

11

a regulation that clearly and manifestly demonstrates that airlines are immune from claims of negligent instructions, and therefore the Court cannot infer preemption. *See Hodges*, 44 F.3d at 338 ("This silence takes on added significance in light of Congress's failure to provide any federal remedy for persons injured by such conduct. It is difficult to believe that Congress would, without comment, remove all means of judicial recourse for those injured by illegal conduct." (quoting *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 251 (1984))).

*Witty* is distinguishable on this point. The court in *Witty* explained that its ruling was "narrow[]" and "address[ed] the precise issues before [the court]," which involved a failure to warn. 366 F.3d at 385 (citation omitted). The court "d[id] not, for example, express an opinion as to whether emergency or unplanned situations on flights can form the basis" of a state law claim that is not preempted. *Id.* at 386. This case, unlike *Witty*, concerns an unplanned instruction. Additionally, *Witty* concerned a tort claim about a subject—aircraft-related warnings—that had a significant number of regulations concerning it, thus creating a pervasive scheme. *See id.* at 384. In contrast, this case concerns a tort claim about duties the airline has to its passengers. The regulations Southwest identifies, which are largely duplicative of those *Witty* cites, do not reveal a clear and manifest intent by Congress to preclude state laws imposing duties of care on airliners.

Second, the Act "appear[s] to contemplate some concurrent state regulation." *McCraw*, 90 F.4th at 796 (citation omitted). "The remedies provided by the Act do not include a private right of action for violations of FAA regulations." *Drake v. Lab'y Corp. of Am. Holdings*, 458 F.3d 48, 57 (2d Cir. 2006) (citation omitted); *see also Kalick v. Nw. Airlines Corp.*, 372 F. App'x 317, 320 (3d Cir. 2010) ("We have previously held that the Federal Aviation Act . . . does not create a private right of action." (citation omitted)). Despite not providing an avenue for persons injured on an aircraft to sue its operator, FAA regulations require that aircraft operators maintain insurance

12

that, at a minimum, covers payments should the carrier "become legally obligated to pay [] damages . . . for bodily injury to or death of a person . . . resulting from the carrier's operation or maintenance of aircraft in air transportation." 14 C.F.R. § 205.5(a). The existence of an insurance requirement is evidence that Congress did not intend to foreclose liability for injuries caused by negligence since "[a] complete preemption of state [personal injury] law . . . would have rendered any requirement of insurance coverage nugatory." *Hodges*, 44 F.3d at 338.

Third, Section 205.5(a) infers liability for the specific negligent instruction alleged by Plaintiffs. Plaintiffs argue that Defendants breached their duty of care when the flight attendant instructed Mosure to stow baggage after a warning of turbulence. Resp. 7. The actions of flight attendants related to the "proper monitoring of and care for the passengers' well-being" during a flight are considered the "operation" of the aircraft. *Christoph v. Nw. Airlines, Inc.*, No. 95-30811, 1996 WL 335549, at *1 (5th Cir. 1996); *see also Hodges*, 44 F.3d at 339 (defining the operation of an aircraft to include "flight attendants properly monitor[ing] compliance with overhead rack regulations" during flight). Section 205.5(a) can therefore be read as acknowledging legal liability for bodily injuries caused by negligent flight attendant instructions related to passenger safety and baggage.

In sum, it is not clear from the Act or FAA regulations that Congress intended to preempt airline liability for negligent instructions, and the FAA's insurance regulation implies that Congress expected airlines to be liable under state law for injuries caused by the operation of the aircraft during flight. For these reasons, federal aviation regulations do not "evidence a desire to occupy" Plaintiffs' remaining claims "completely." *McCraw*, 90 F.4th at 796. Thus, the Court concludes that field preemption does not preclude Plaintiffs' claims that Defendants had a duty to operate the aircraft with care during transit.

13

### *C. Insufficient Pleading*

Southwest argues that Plaintiffs did not sufficiently plead their claims. Southwest's Br. 11-12. As explained above, the Court has already disposed of Plaintiffs' failure to warn and negligent training claims. What remains is Southwest's contention that Plaintiffs "bring no allegations which relate in any way to the operation of the aircraft, or in any way implicate negligent operation of an aircraft." *Id.* at 11. However, the operation of an aircraft includes any use of the aircraft for the purpose of air navigation, which includes the actions of flight attendants during flight related to passenger monitoring and care. *Christoph*, 1996 WL 335549, at *1. Plaintiffs allege that a negligent instruction of the flight attendant during the flight led to Mosure's injury. Am. Compl. ¶¶ 12-14. A reasonable inference drawn from Plaintiffs' allegations is that the flight attendant's instruction related to the monitoring and care of Plaintiffs. Thus, Plaintiffs have sufficiently alleged claims regarding the negligent operation of an aircraft.

### IV. CONCLUSION

For the foregoing reasons, the Motion is **GRANTED IN PART** and **DENIED IN PART**. The Court dismisses Plaintiffs' negligence claims against Defendants to the extent they are based upon a failure to warn or a failure to train. Otherwise, Plaintiffs' negligence and loss of consortium claims survive. Because Plaintiffs have already amended their complaint multiple times and do not request additional leave to amend, the Court finds that Plaintiffs have pleaded their best case and that no further leave to amend is warranted. *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009) (citation omitted).

**SO ORDERED.**

SIGNED July 31, 2024.

KAREN GREN SCHOLER
UNITED STATES DISTRICT JUDGE